**Charles COLEMAN,**
**Petitioner-Appellant,**
**Cross-Appellee,**

**v.**

**STATE OF ALABAMA,**
**Respondent-Appellee,**
**Cross-Appellant.**

**No. 86–7151.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 21, 1987.

Robert B. Donworth, Jr., Cumberland School of Law, Birmingham, Ala., for petitioner-appellant, cross-appellee.

Donald Siegelman, Atty. Gen., James B. Prude, Asst. Atty. Gen., Montgomery, Ala., for respondent-appellee, cross-appellant.

Before VANCE and KRAVITCH, Circuit Judges, and BROWN,* Senior Circuit Judge.

BROWN, Senior Circuit Judge:

Coleman filed this petition for federal habeas corpus to set aside his guilty pleas to assault with intent to murder in 1972 and larceny from a person in 1977, because he was not informed of the possible availability of the Alabama Youthful Offender Act.[1] Coleman argues that his pleas of guilty were not made with full knowledge of their consequences and thus were made in violation of his federal due process rights. Although Coleman has satisfied both the 1972 and 1977 probationary sentences, he maintains this challenge to their constitutionality arguing that if adjudged a youthful offender, that adjudication is not a criminal conviction for enhancement purposes. These two prior convictions were used under Alabama's Habitual Offender Act to enhance his 1982 conviction for robbery.

The District Court accepted Coleman's argument that his plea was constitutionally flawed and granted habeas corpus for the 1977 charge, but denied his petition on the 1972 charge reasoning that the benefits of the Alabama Youthful Offender Act were unavailable to Coleman because, although it became effective prior to Coleman's plea arraignment it was not in effect when Coleman committed the 1972 crime. We affirm the District Court's grant of habeas corpus for the 1977 conviction and reverse its denial of the writ for the 1972 conviction. The Act was in effect at the time Coleman entered his guilty pleas and was available to him. Failure to inform him of the possibility of youthful offender treatment precluded him from having constitutionally sufficient knowledge of the effect of his guilty plea.

---

* Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. The Youthful Offender Act was modeled after the New York Youthful Offender Act and approved February 10, 1972. Under the Alabama Act, Ala.Code § 15–19–1, the indictment is set aside and the defendant is arraigned as a youthful offender rather than for the criminal act. Upon conviction, the Court may impose various sentences, the maximum of which is a three-year commitment to the custody of the Department of Corrections. Whether a defendant receives youthful offender treatment lies within the sentencing court's discretion. Anyone "charged with a crime committed in his minority but ... not disposed of in juvenile court ..."

is eligible under the Act. Ala.Code § 15–19–1. *See Raines v. State,* 552 F.2d 660, 661 (5th Cir. 1977) discussed *infra* at 1472. Coleman was 16 at the time of the 1972 offense and although 21 at the time he entered his guilty plea in 1977, he was 20 at the time he committed the crime and at the time he was indicted.

A person adjudged a youthful offender is not the equivalent of a conviction, and although the statute provides that it may be used against him if he is later convicted of a crime, Ala.Code § 15–19–7(a), the state does not contend that it would have been used to enhance Coleman's 1982 sentence under the Alabama Habitual Criminal Act.

### The 1972 Offense

Coleman was arrested for assault with intent to murder prior to the effective date of the Alabama Youthful Offender Act on February 10, 1972 at the age of 16. He was not indicted until after the Act came into effect. At the time he entered his guilty plea, the trial Judge explained the charge to him as well as the constitutional rights he waived by pleading guilty. The trial judge testified at the evidentiary habeas hearing that although he did not recall accepting Coleman's guilty plea, his normal procedure was to go over the material on the *Ireland* form [2] with the defendant.[3] The *Ireland* form used in accepting Coleman's plea in 1972, and also in 1977, failed to inform him of the possibility of youthful offender treatment. Coleman received three years of probation for this offense.

### The 1977 Offense

In 1977, Coleman was charged with robbery, but was allowed to plead guilty to the lesser included offense of larceny from a person. Coleman appeared before the same Judge and again signed an *Ireland* form articulating the rights he waived by pleading guilty. Although the form was for robbery, the Magistrate and District Court found that Coleman was informed of the elements and sentencing limits for larceny from a person to which he was sentenced to four years probation. Again,

Coleman was not informed of the provisions of the Alabama Youthful Offender Act.

### The 1982 Offense

In 1982, Coleman pleaded guilty to robbery in the third degree which has a maximum sentence of ten years. The sentencing Judge, under the Alabama Habitual Offender Act, used Coleman's 1972 and 1977 convictions to enhance his sentence to 15 years. The 1972 and 1977 convictions challenged here were also used to enhance Coleman's 1983 sentence for forgery in the second degree for which he received a twenty-three year sentence. Coleman has not challenged these enhanced sentences before this Court, but only the two underlying sentences from 1972 and 1977.

### Federal Habeas Proceedings

After exhausting his state remedies,[4] Coleman filed this petition for habeas corpus alleging that his 1972 and 1977 guilty pleas were not freely and voluntarily made and could not be used to enhance his present sentence under Alabama's Habitual Offender Act. The Magistrate recommended that Coleman's writ of habeas corpus be granted for both his 1972 and 1977 convictions. The Magistrate's recommendation on the 1972 conviction was premised on his conclusion that Coleman was entitled to juvenile status and was improperly sen-

---

2. The *Ireland* form named after the state court case first upholding its use, *Ireland v. State,* 250 So.2d 603 (Ala.Crim.App.1971), is a form used by the sentencing court to advise a defendant of the nature of the charges against him, the minimum and maximum limits of punishment and the consequences of the plea as well as the constitutional rights waived by the defendant by entering a guilty plea. The defendant's signature attests that he has been advised of his rights and knowingly waived them. For an example of an *Ireland* form similar to the ones Coleman signed, see *Burden v. Alabama,* 584 F.2d 100, 102–03 (5th Cir.1978).

3. No transcript was prepared or preserved of Coleman's plea in either the 1972 conviction or the 1977 conviction. The federal Magistrate conducted an evidentiary hearing to determine whether Coleman was advised of his constitu-

tional rights prior to entering his plea. Judge Jasper, the sentencing judge who received both pleas testified at those proceedings as did Coleman's attorney. The Magistrate's findings, which were adopted as findings of fact by the District Court following an independent review of the transcript, indicate that Coleman was apprised of the rights he waived by pleading guilty but was not advised of his right to request consideration for youthful offender treatment.

4. Prior to filing this petition in federal court, Coleman filed a writ of coram nobis in state court challenging the voluntariness of his 1972 and 1977 guilty pleas after they were used to enhance his 1982 sentence. The state court summarily denied relief and was affirmed without opinion on appeal.

tenced as an adult. The Magistrate's further recommendation that the writ be granted for the 1977 conviction came from the court's failure to inform Coleman that he was entitled to be considered for youthful offender treatment under Alabama law. The Magistrate reasoned that although informing Coleman of the Youthful Offender Act was required by statute, it was procedural in nature and was not a violation of Coleman's due process rights. Nevertheless, the Magistrate recommended the writ issue on the basis of an equal protection violation because other defendants in Coleman's position were informed of the possibility of youthful offender treatment.

Following an independent review of the transcripts, the District Court accepted the Magistrate's findings of fact and granted Coleman's petition for his 1977 conviction. The Court did this on the basis that "[t]he failure to comply with the statutory scheme adopted by the legislature of the State of Alabama deprived [Coleman] of due process with respect to the conviction and sentence in [1977]." *Coleman v. White*, No. C.V. 85–A–852–S (N.D.Ala. Feb. 20, 1986).

The District Court rejected the Magistrate's recommendation to grant habeas relief for the 1972 conviction. It concluded that the Magistrate misapplied the Juvenile Code and that Coleman could not receive youthful offender treatment for a crime which occurred prior to the effective date of the Act.

### *The Youthful Offender Act*

The Alabama Youthful Offender Act provides that "the court, in its discretion, may direct that the defendant be arraigned as a youthful offender, and no further action shall be taken on the indictment or information." Ala.Code § 15–19–1. Judge Wisdom, writing for the Fifth Circuit, described the Alabama Youthful Offender Act as "humanistic, protective, and rehabil-

itative in purpose in providing an intermediate procedure for youths falling between juvenile and adult.... [T]he intent of the Act is to destigmatize, to rehabilitate, and to give youths another chance, vouchsafing them from some of the awful consequences attaching to a criminal conviction." *Raines v. Alabama*, 552 F.2d 660, 665 (5th Cir.1977), *cert. denied*, 434 U.S. 973, 98 S.Ct. 529, 54 L.Ed.2d 464 (1978).[5]

■ The Alabama Youthful Offender statute does not create a new criminal act, rather it creates a new method of adjudicating existing criminal acts of youths, who would otherwise be sentenced as adults, without casting the enduring burdens associated with a criminal conviction at a young and perhaps immature time. The Youthful Offender Act provides a second chance and a fresh start to those who are eligible.

Under the Alabama version, which was modeled on the New York statute, youthful offender treatment is entrusted to the discretion of the trial Judge. If youthful offender treatment is granted, the original indictment or information is set aside and the defendant is tried by the Judge as a Youthful Offender. Ala.Code § 15–19–1. Punishment is provided for by the statute as suspending sentence, probation, a fine, or no more than three years in the custody of the board of corrections. Ala.Code § 15–19–6. Adjudication as a youthful offender may not be deemed a criminal conviction so as to disqualify an individual from public office or employment, forfeit any rights or hold any license. Further, the records are not open to public inspection, but may be inspected at the Court's discretion. Ala.Code § 15–19–7.

### *Due Process and the Plea of the Youthful Offender*

■ Before a Judge can accept a defendant's guilty plea, the Judge must determine that the plea is made voluntarily

---

**5.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

and with full knowledge of its effect. *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial." *Boykin,* 395 U.S. at 243, 89 S.Ct. at 1712, 23 L.Ed.2d at 279. In order to validly waive these constitutional rights, the defendant must be fully informed of what rights he is waiving and the effect of pleading guilty to the charge. One of the most lasting effects of a defendant's plea of guilty is the type and term of sentence he may receive and the lasting effects of that sentence.

■ *Boykin* stands for the proposition that a defendant is constitutionally entitled to have information concerning the range of punishment prescribed by the act to which he may be sentenced and the consequences of the conviction at the time he enters his plea. "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162, 168 (1970).

■ One of the options available to Coleman of which he—and apparently everyone else involved—was unaware was his right to request youthful offender consideration. With all the benefits of the Youthful Offender Act and particularly the privilege of not being sentenced as an adult criminal, Coleman was certainly entitled to know that he had the possibility of these favorable options available to him.

The Alabama courts have repeatedly imposed an affirmative duty on the trial Judge to inform eligible defendants of the provisions of the Youthful Offender Act. *See, e.g., Robinson v. State,* 429 So.2d 682 (Ala.Ct.Crim.App.1983), *Clemmons v. State,* 56 Ala.App. 275, 321 So.2d 237 (Ala.Ct.Crim.App.1974), *aff'd,* 294 Ala. 746, 321 So.2d 238 (1975). The Alabama Supreme

Court explained "our statute requires that the determination to grant or refuse youthful offender treatment be made at a point near the commencement of the criminal action and before entry of a plea.... [T]he first step that the trial court takes under the scheme of the statute is to advise the defendant that he might be eligible for Youthful Offender treatment." *Clemmons v. State,* 294 Ala. 746, 321 So.2d 238, 242 (1975).

In *Clemmons,* the Alabama Supreme Court reversed the defendant's conviction which was grounded on a guilty plea because "[h]e was never apprised of the fact that he might be treated as a youthful offender under the statute." *Id.* Despite the Alabama Supreme Court's reversal for failing to advise the defendant of his eligibility for youthful offender consideration, the Court went on to hold that calling the Youthful Offender Act to the defendant's attention was not mandated by the Constitution of the United States or the Constitution of the State of Alabama. *Id.* 321 So.2d at 242–43.

The State argues, based on the language of *Clemmons* that we should deny writs on both convictions because even though the plea process violated statutory requirements, it does not raise a federal constitutional violation. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Vruno v. Schwarzwalder,* 600 F.2d 124 (8th Cir.1979) ("the simple fact that state law prescribed certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension.... The due process clause does not convert every state statutory right into a constitutional entitlement.")

However, the important consequences that the Youthful Offender Act has on a defendant's conviction and its later impact would so greatly affect his decision of whether to plead guilty to the offense or request consideration for youthful offender treatment that failure to ensure the defendant has knowledge of the provisions of the Youthful Offender Act precludes the

defendant's guilty plea from being made with full knowledge as required by the due process clause of the federal constitution.

Additionally, the Supreme Court holds that when a state imposes mandatory procedures, those procedures can escalate to substantive predicates of a due process right. In *Hewitt v. Helms*, 459 U.S. 460, 471–72, 103 S.Ct. 864, 871, 74 L.Ed.2d 675, 688 (1983), the Supreme Court held that the procedural process for removing prisoners from the general prison population went beyond simple procedural guidelines and took on a substantive character, the violation of which violated the prisoner's federal due process rights. The statute "used language of an unmistakably mandatory character, requiring that certain procedures 'shall' 'will,' or 'must' be employed.... [T]he repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest."

The Alabama legislature similarly employed mandatory language in establishing the procedures required when a defendant appears before the Court who is eligible for youthful offender consideration. "A person charged with a crime which was committed in his minority but was not disposed of in juvenile court and which involves moral turpitude or is subject to a sentence of commitment for one year or more *shall* ... be investigated and examined by the court to determine whether he should be tried as a youthful offender...." Ala.Code § 15–19–1. The Alabama courts have similarly held this to be a mandatory duty of the sentencing Judge before accepting a plea of guilty from a defendant eligible for youthful offender treatment. *See Johnson v. State*, 56 Ala.App. 582, 324 So.2d 297 (Ala.Crim.App.1975) (reversing sentence based on guilty plea when defendant was not informed of the possibility of youthful offender treatment).

The State argues that because youthful offender treatment is discretionary with the sentencing Judge, Coleman had no federally protected right to youthful offender treatment.[6] The fact that obtaining youthful offender treatment is relinquished to the discretion of the trial court does not eliminate the accused's constitutional right to have full knowledge of exactly what rights he waived by his guilty plea.

### Retroactivity or Applicability

■ The 1972 conviction presents the additional complication that the Youth Offender Act did not become effective until after Coleman committed the crime, yet before he actually entered his plea of guilty. The State argues that the Alabama Youthful Offender Act is not retroactive and thus should not be applied to Coleman's 1972 conviction.

The Alabama Supreme Court in *Morgan v. State*, 291 Ala. 764, 287 So.2d 914 (1973), held that the Youthful Offender Act is not retroactive and did not apply to Morgan. However, Morgan's case was on appeal when the Youthful Offender Act became effective on February 10, 1972. Once the appeal was filed, the trial court lost jurisdiction and was thus unable to call the Act to the attention of Morgan because it was not the law at the time of the trial. *Id.* at 915.

In a case similar to Coleman's situation, in *Whitfield v. State*, 56 Ala.App. 653, 324 So.2d 793 (1975), the defendant was indicted 36 days *before* the Act became effective and entered a guilty plea 13 days *after* the

---

6. The state's reliance on *Jean v. Nelson*, 727 F.2d 957 (11th Cir.1984), is misplaced. In affirming our remand, the Supreme Court held that this Court should not have reached the constitutional issues relied on by the State. *Jean v. Nelson*, 472 U.S. 846, 105 S.Ct. 2992, 86 L.Ed.2d 664, 671 (1985). The analysis in *Jean* is inapplicable to Coleman's situation. In that case we denied habeas corpus to an excludable alien who claimed a due process violation based on the court's failure to inform him that he could request asylum. We held that the statute created only the right to petition for asylum and no due process violation occurred. However, we held that excludable aliens are not accorded the full degree of due process rights in deportation proceedings because they are not criminal in character. *Jean*, 727 F.2d at 974.

Act came into affect. Whitfield raised the failure of the trial court to apprise him of the Youthful Offender Act for the first time in a motion for a new trial. The Court of Criminal Appeals reversed the trial court because it failed to perform the mandatory duty of apprising the defendant of his rights under the Youthful Offender Act before accepting his guilty plea. *Id.* at 796.[7] *See also Wilson v. State,* 57 Ala. App. 124, 326 So.2d 314 (1975); *Flippo v. State,* 49 Ala.App. 138, 269 So.2d 155 (1972).[8]

Coleman was entitled to be advised of his eligibility to request consideration for youthful offender treatment in both 1972 and 1977. The trial court's failure to perform its mandatory duty under the Act to so inform Coleman violates his federal due process rights under the Fourteenth Amendment and mandates that his guilty pleas be set aside.

We only decide that Coleman's guilty pleas were accepted in violation of his Fourteenth Amendment rights and must be vacated. We may not determine whether Coleman would have received youthful offender treatment in either 1972 or 1977. Coleman is constitutionally entitled to an opportunity to enter a new plea with knowledge of the full range of sentencing he is subject to, including the right to request consideration for youthful offender treatment. Coleman's petition for habeas corpus does not challenge his enhanced sentence in 1982 or 1983 and we express no opinion as to the effect of this ruling on those sentences. No federal constitutional violation is presently presented with regard to the 1982 and 1983 sentences; such matters are properly left to the initial determination of the state courts of Alabama on proper petition, including perhaps thereafter any possible federal constitutional attacks.

AFFIRMED IN PART, REVERSED IN PART.

---

7. The trial court held the Act was unconstitutional and was reversed on that basis. The appellate court's remand for a new trial with youthful offender consideration demonstrates its holding that Whitfield was eligible even though the Act was not effective at the time of the crime, but was effective at the time of trial.

8. Coleman presents a situation quite distinct from that faced by the Court of Criminal Appeals faced in *Norris v. State,* 429 So.2d 649 (Ala.Crim.App.1982). In *Norris,* the defendant sought Youthful Offender treatment for convictions five years prior to the effective date of the Youthful Offender Act. Coleman, on the other hand, seeks Youthful Offender treatment for a conviction which took place after the Youthful Offender Act became effective.