575 So.2d 131 (1990)
Timothy John YELDER
v.
STATE.
3 Div. 95.
Court of Criminal Appeals of Alabama.
May 25, 1990.
Rehearing Denied June 29, 1990.
*132 Arthur Parker and R.B. Jones, Birmingham, for appellant.
Don Siegelman, Atty. Gen., and Beth Jackson Hughes, Asst. Atty. Gen., for appellee.
TAYLOR, Presiding Judge.
The appellant, Timothy John Yelder, was convicted of rape in the first degree, a violation of § 13A-6-61, Code of Alabama 1975; burglary in the first degree, a violation of § 13A-7-5, Code of Alabama 1975; and robbery in the first degree, a violation of § 13A-8-41, Code of Alabama 1975. At the sentencing hearing, the trial court sentenced him to life imprisonment on the rape charge, 25 years' imprisonment on the burglary charge, and 50 years' imprisonment on the robbery charge.
The evidence presented by the State tended to show that between 10:30 and 11:30 p.m. on May 30, 1988, the victim was awakened by an intruder in her east Montgomery home. She was then forcibly raped and robbed. After expressing anger at the small amount of cash in the victim's handbag, the assailant fled.
The victim then called the police to report the crime. When the police arrived shortly thereafter, the victim was waiting for them outside in her front yard, because she was afraid to be in the house alone. One officer entered her home to make sure the assailant was gone, then returned outside to where the victim and the other officers were. The victim was interviewed and gave officers a description of her assailant. She was then taken to an area hospital for examination and treatment. Meanwhile, police evidence technicians were searching her home for evidence to aid in identifying the assailant. The search turned up a latent palm print. Several items of evidence were recovered, along with hair and fiber samples.
The palm print was later compared with, and found to be a perfect match with, the known palm print of Timothy John Yelder, the appellant. Hair, fiber, and semen samples could not be positively identified as having come from the appellant. Experts could state only that, based on the samples, the appellant could have been the assailant. Additionally, investigators discovered that a co-worker of appellant's picked him up at a convenience store near the victim's home between 7:30 and 8:00 a.m. on May 31, 1988. Yelder told his co-worker that he had had a flat tire on his van late on the night before and, instead of calling someone to come and get him, had just slept in his van. Appellant was subsequently arrested, charged, and convicted of first-degree rape, robbery, and burglary.

I
Appellant's first contention of error is that his trial counsel was ineffective and *133 that he therefore did not receive a fair trial. Specifically, appellant argues that his trial counsel was ineffective in failing to object under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to the State's use of its peremptory challenges and the racial composition of his jury. Our examination of the record reveals that the State used 17 of its 29 peremptory challenges to remove 17 of the 18 black prospective jurors. The record further reveals that appellant's jury consisted of 11 white jurors and one black juror.
The legal standard to be used in determining ineffective assistance of counsel claims is found in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That case sets out two components to an ineffective assistance of counsel claim:
"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
466 U.S. at 687, 104 S.Ct. at 2064. See also, Ex parte Lawley, 512 So.2d 1370, 1372 (Ala.1987).
As to the first prong of an ineffective assistance claim, the Supreme Court held that the correct standard for attorney performance is an objective one; that is, "reasonableness under prevailing professional norms." 466 U.S. at 688, 104 S.Ct. at 2065. The Court went on to hold that "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id.
After an appellant has identified the specific acts or omissions which he alleges were the result of a lack of reasonable professional judgment, the court must then determine whether those acts are "outside the wide range of professionally competent assistance." 466 U.S. at 690, 104 S.Ct. at 2066. In making this determination, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id.
Even when an attorney's performance is found to be outside the wide range of professional reasonableness, the appellant's conviction will not be set aside "if the error had no effect on the judgment." 466 U.S. at 691, 104 S.Ct. at 2066. "Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." 466 U.S. at 692, 104 S.Ct. at 2067. Only in cases involving denial of assistance of counsel and counsel's conflict of interest will prejudice be presumed. Id. Aside from these claims, "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." 466 U.S. at 693, 104 S.Ct. at 2067.[1]
*134 The Supreme Court then set out the standard to be used in determining prejudice:
"Accordingly, the appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution. United States v. Agurs, 427 U.S. [97], at 104, 112-113, [96 S.Ct. 2392, 2397, 2401-2402, 49 L.Ed.2d 342], and in the test for materiality of testimony made unavailable to the defense by Government deportation of a witness, United States v. Valenzuela-Bernal, [458 U.S. 858 (1982) ] supra, at 872-874 [102 S.Ct. 3440, 3449-3450, 73 L.Ed.2d 1193]. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."
466 U.S. at 694, 104 S.Ct. at 2068. More specifically, the Supreme Court, per Justice O'Connor, stated as follows:
"When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt....
"In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."
466 U.S. at 695, 104 S.Ct. at 2068.
Having set out the legal standard to be applied in this case, we now turn to Appellant Yelder's specific allegation of his trial counsel's ineffectiveness.
The appellant, a black male, contends that his trial counsel, also a black male, was ineffective in that he failed to raise a Batson objection concerning the State's use of its peremptory challenges. This issue was first raised in appellant's motion for a new trial. At the hearing on this motion, trial counsel testified that 18 of the 73 potential jurors qualified in this case were black. Trial counsel further testified that the State used 17 of its 29 peremptory challenges to remove 17 of the 18 black prospective jurors. The racial composition of the jury was 11 white jurors and one black juror. Trial counsel stated that he made no Batson objection to the State's use of its peremptory challenges to strike black prospective jurors despite the fact that Batson had been decided more than two years prior to appellant's trial. When trial counsel was asked if he had read the recent Alabama decisions on Batson prior to striking the jury in this case, he replied, "Since the Yelder trial I have read the Branch [Ex parte Branch, 526 So.2d 609 (Ala.1987) (general guidelines set out for application of Batson decision) ] decision."
Appellant's conviction is not due to be reversed, because appellant has failed to prove that there is a reasonable probability that the outcome of his trial would have been different. Here, the evidence against appellant was overwhelming. A palm print found inside the victim's home at the point of her assailant's entry was positively identified as coming from the appellant. Forensic experts testified that there was a possibility that semen found on the victim's pajama pants belonged to appellant and that fibers found at the point of entry were consistent with fibers in the shirt appellant was wearing at the time of his arrest. Appellant's co-worker testified that he picked appellant up at a nearby convenience store early on the morning following the incident. Finally, the victim positively identified the appellant at trial as the man who entered her home, robbed her, and raped her on May 30, 1988. We find, therefore, that based on the totality of the evidence before the court, appellant has failed to meet his burden of showing that the decision reached by the jury likely would have been different absent his trial counsel's failure to raise a Batson objection.

II
The appellant next contends that the trial court erred by not restricting the *135 State's cross-examination of defense witnesses Leanne Yelder and Caroletha Washington. On direct examination both women provided an alibi for appellant on the night in question. During cross-examination each was asked if she could explain how appellant's palm print came to be found in the victim's residence during the police investigation of the crime scene. Over defense counsel's objection, each woman answered in the negative. Appellant argues that the prosecutor's question called for a conclusion on the part of the witness, and thus improperly invaded the province of the jury.
"It is well established in Alabama that cross-examination is not limited to matters brought out on direct examination, but extends to all matters within the issues of the case. Hughes v. State, 385 So.2d 1010 (Ala.Cr.App.1980); Braswell v. State, 371 So.2d 992 (Ala.Cr.App.1979); Ala.Code § 12-21-137 (1975). The privilege of cross-examination inures to the benefit of the State, in a criminal prosecution, just as to any other party. Bickerstaff v. State, 369 So.2d 315 (Ala.Cr. App.1979). The scope and extent of such are matters addressed to the sound discretion of the trial court, whose ruling will not be disturbed absent a showing of gross abuse or substantial injury. McFerrin v. State, 339 So.2d 127 (Ala.Cr. App.1976); Roberts v. State, 338 So.2d 466 (Ala.Cr.App.1976)."
Trawick v. State, 431 So.2d 574, 576-77 (Ala.Cr.App.1983).
Here, the witnesses in question provided an alibi for appellant. Each testified that, on the night in question, appellant could not have been the individual who entered the victim's residence and raped her because at the time of the assault, the appellant was with his girl friend in an entirely different part of town from where the victim's residence was located. Following this testimony, the State then inquired of each witness if she could explain how the appellant's palm print got on the victim's bathroom window. Clearly, this question was asked to test the credibility of the witnesses, and was not asked for the purpose of proving the bad character of the accused. Indeed, the subject of the prosecution's inquiry, the presence of appellant's palm print in the victim's home, was an undisputed fact and was not, in and of itself, a "misdeed." See Wiggins v. State, 513 So.2d 73, 78 (Ala.Cr.App.1987). The prosecutor's question involved a matter which was at issue in the case regarding appellant's alibi defense. Accordingly, the trial court did not abuse its discretion when it allowed the prosecution to cross-examine these defense witnesses concerning the palm print.

III
Appellant's final contention of error is that the trial court erred in allowing the State to introduce his known palm print into evidence when that palm print had been obtained as a result of appellant's having previously been adjudicated a youthful offender. This, he argues, violates § 15-19-7, Code of Alabama 1975.
That Code section provides in part as follows:
"The fingerprints and photographs and other records of a person adjudged a youthful offender shall not be open to public inspection; provided, however, that the court may, in its discretion permit the inspection of papers or records."
It would appear, therefore, from the plain language of this statute that it is within the sound discretion of the trial court to permit the inspection of an adjudicated youthful offender's fingerprints, photographs, or other records. See also Coleman v. Alabama, 827 F.2d 1469, 1472 (11th Cir.1987); Raines v. State, 294 Ala. 360, 317 So.2d 559, 561 (1975). Here, the prosecution offered the known palm print of appellant, which had been obtained when he was a youthful offender. Defense counsel objected, arguing that palm print was inadmissible because it had been obtained as a result of appellant's prior adjudication as a youthful offender. The trial judge overruled defense counsel's objection and received appellant's known palm print into evidence. This palm print was relevant and material to the case at bar, as it linked *136 appellant to the crime scene. Accordingly, the trial court did not abuse its discretion when it received appellant's known palm print into evidence.
Appellant received a fair trial. His conviction is therefore due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur except BOWEN, J., who dissents with opinion.
BOWEN, Judge, dissenting.
The majority implicitly finds that trial counsel erred by failing to raise a Batson objection, and that this error was professionally unreasonable. Nevertheless, it affirms appellant's conviction because it finds that appellant failed, under the Strickland v. Washington test, to prove that he was prejudiced by his counsel's error. The Strickland test for prejudice, except in those instances where prejudice can be presumed, is an outcome-determinative one: whether, absent the attorney's error, "the factfinder would have had a reasonable doubt respecting guilt."
This outcome-determinative test is simply not the proper criterion for measuring prejudice in the context of a Batson error. Applying this measure of prejudice to a Batson error would be, in effect, requiring the appellant to prove that, had blacks not been unfairly removed from his jury, the factfinder might have acquitted him! This is precisely the assumption Batson forbids. "[T]he Equal Protection Clause forbids the States ... to strike black veniremen on the assumption that they will be biased in a particular case simply because the defendant is black." 476 U.S. at 97, 106 S.Ct. at 1723. "Exclusion of blacks from a jury, solely because of race, can no more be justified by a belief that blacks are less likely than whites to consider fairly or sympathetically the State's case against a black defendant than it can be justified by the notion that blacks lack the `intelligence, experience, or moral integrity,' to be entrusted with that role." 476 U.S. at 104-05, 106 S.Ct. at 1727 (Marshall J., concurring) (citations omitted).
As Batson itself indicates, an outcome-determinative test simply is not appropriate for a fourteenth amendment juror discrimination claim. If it were used, no appellant could ever prove prejudice without relying on the pernicious assumption that Batson condemns, that is, that if blacks had not been struck from a black defendant's jury, the defendant would more likely have been found not guilty.
The test must, of necessity then, be one of presumed prejudice, i.e., that if in fact blacks were unfairly removed from his jury, the appellant was deprived of a fair trial, a trial whose result is reliable. The "fair trial" and "reliable result" tests are implicit in both Strickland and Batson. The Strickland court, in a portion of the opinion quoted by the majority here, in fact stated the "prejudice" test as follows: "Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 687, 104 S.Ct. at 2064 (emphasis added).
Only later in the Strickland opinion did the court, after explaining that prejudice is not normally presumed (except in the cases of actual or constructive denial of counsel, interference with counsel's assistance, or actual conflict of interest), but must be affirmatively proved, set out the outcome-determinative test, noting that "claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." 466 U.S. at 693, 104 S.Ct. at 2067 (emphasis added).
Strickland, decided two years before Batson, did not include juror discrimination claims as a further exception, but the general requirement of affirmatively proving prejudice should, in a Batson context, give way to an additional exception for presumed prejudice since, as the Court in Batson observed, "Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice." 476 *137 U.S. at 87, 106 S.Ct. at 1718 (emphasis added).
"Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure. `The very idea of a jury is a body ... composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, persons having the same legal status in society as that which he holds.'"
476 U.S. at 86, 106 S.Ct. at 1717.
If the appellant's trial was marred by purposeful racial discrimination, then we must presume he has been denied the very protection the right to trial by jury was intended to secure. We do not know yet whether appellant's trial was marred by purposeful racial discrimination, because no Batson hearing was held. The cause should, therefore, be remanded for a Batson inquiry and should be procedurally in the same posture as other cases remanded for Batson determinations.
NOTES
[1] The dissent states that "the general requirement of affirmatively proving prejudice should, in a Batson context, give way to an additional exception for presumed prejudice...." Perhaps it should. As an intermediate-level appellant court, however, we are bound by law to follow the decisions of our Supreme Court. § 12-3-16, Code of Alabama 1975. See also Potts v. State, 500 So.2d 1318, 1321 (Ala.Cr.App.1986); Scott v. State, 473 So.2d 1167, 1178-79 (Ala.Cr.App. 1985). The United States Supreme Court's opinion in Strickland v. Washington, supra, was adopted by the Alabama Supreme Court in the case of Ex parte Baldwin, 456 So.2d 129 (Ala. 1984), aff'd, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985). As "this court is bound, by the terms of the act creating the court, by the decisions of the Supreme Court and there is no authority vested in this court to overturn or change the decisions of the Supreme Court in any manner," Passmore v. State, 47 Ala.App. 189, 252 So.2d 115, 116 (1971), it would appear that it is the duty of the Supreme Court, and not this court to create an additional exception for presumed prejudice in a Batson context.