ON REHEARING EX MERO MOTU
The Court's opinion of March 25, 1994, is withdrawn and the following is substituted therefor:
The United States Court of Appeals for the Eleventh Circuit has certified this question to us:
 "Does the failure to inform an age-qualified defendant of his right to apply for youthful offender status deprive the trial court of jurisdiction to entertain a guilty plea, such that a subsequent challenge to that conviction cannot be barred by the limitations period of Ala.R.Crim.P. 32.2(c)?"
The question certified arose out of a habeas corpus petition brought by an Alabama prisoner, Sammie Lee Gordon. In his petition, Gordon attacks the validity of sentences imposed on him in 1986 under the Habitual Felony Offender Act, Ala. Code 1975, § 13A-5-9 et seq., and the validity of an underlying 1973 conviction utilized for enhancement in the 1986 cases, on the grounds that in the 1973 proceedings the court did not advise Gordon of his right to apply for youthful offender treatment.
The United States district court held that because Gordon had not presented his claim in state court, he is now barred from presenting it in the federal court by the limitations provision in Rule 32, A.R.Crim.P. Rule 32.1(a) imposes a two-year limitations period on claims for post-conviction relief based upon federal or state constitutional grounds. However, collateral relief is available under subsections (b) and (c) if the court was without jurisdiction to render the judgment or to impose the sentence, or if the sentence imposed exceeds the maximum authorized by law or is otherwise not authorized by law. Claims alleging jurisdictional defects and excessive sentences under Rule 32.1(b) and (c) are not subject to the two-year time bar. Ladd v. State, 577 So.2d 926,926-27 (Ala.Crim.App. 1990), cert. denied, 577 So.2d 927
(Ala. 1991).
In certifying the question before us, the Eleventh Circuit Court of Appeals explained:
 "In straightforward failure-to-advise cases not involving youth offender status, the Alabama cases have held that failure to advise is a jurisdictional matter that can be raised for the first time on appeal. In Ex parte Rivers, 597 So.2d 1308 (Ala. 1991), the court held that a guilty plea entered by a defendant who had not been advised of his possible minimum and maximum sentences is not knowingly, voluntarily, and intelligently given, so that the judgment of conviction must be reversed and the case remanded. Id. at 1310. The Alabama Supreme Court in Rivers did not use the term 'jurisdiction.' But subsequently the Alabama Court of Criminal Appeals has followed Rivers and interpreted it to mean that failure to advise the defendant as required by Rivers is 'an absolute constitutional requirement' and is a jurisdictional matter that can be raised for the first time on appeal. Sampson v. State, 605 So.2d 846, 847
(Ala.Crim.App. 1992). Three months later, without reference to Sampson, the Court of Criminal Appeals reiterated that failure to advise of possible minimum and maximum sentences is jurisdictional and can be raised at any time regardless of whether objection was made before the trial judge. Brown v. State, 611 So.2d 1194, 1197-98 (Ala.Crim.App. 1992).
 "Thus, in straightforward failure-to-advise cases not involving youth offender status, the Court of Criminal Appeals appears to have continued to follow the Rivers principle with the gloss of its own interpretation that Rivers means that failure to advise is jurisdictional. But that court has done so with great reluctance. In Parish v. State, [Ms. CR-90-1285, April 23, 1993] 1993 WL 124790 (Ala.Crim.App. 1993), the *Page 93 
court expressed at length its view that failure to advise is not a jurisdictional matter but rather should be examined within the context of voluntariness of the plea, but that — as it was required to do — it accepted that it was bound by Rivers to review defendant's conviction. Three months later in August 1993, the Court of Criminal Appeals again reluctantly followed Rivers and reversed the defendant's conviction. Bennett v. State, 649 So.2d 213 (Ala.Crim.App. 1993).
 "In the context of failure to advise of youthful offender rights the Court of Criminal Appeals had held, prior to Rivers, that the failure to advise was not a jurisdictional matter. Hobbie v. State, 564 So.2d 97, 99 (Ala.Crim.App. 1990), overruled as to a different holding, 596 So.2d 613
(Ala.Crim.App. 1991). Without citing Rivers or any of its progeny, the Court of Criminal Appeals adhered to this view in Mosley v. State, 616 So.2d 362, 364 (Ala.Crim.App. 1993).
 "This brings us to the question of the application of Rivers (as interpreted by the Court of Criminal Appeals to establish a jurisdictional principle) to the case before us where the failure to advise is not directly of minimum and maximum sentences but of possible treatment as a youth offender which, as we have pointed out, subsumes different maximum[s] and minimums. As we have discussed above, on this issue, Alabama law is not clearly settled. Compare Sampson, 605 So.2d at 847 (stating that failure to advise of minimum and maximum sentence is jurisdictional) with Mosley, 616 So.2d at 364 (stating that failure to advise of youthful offender rights is not jurisdictional)."
Gordon v. Nagle, 2 F.3d 385, 388-89 (11th Cir. 1993).
The confusion in Alabama law is the result of contradictory holdings by the Court of Criminal Appeals in Sampson and Mosley
and that court's interpretation of our decision in Ex parteRivers. The Court of Criminal Appeals has read Ex parte Rivers
as holding that any defect in the entry of a plea of guilty is always a matter of jurisdiction. Ex parte Rivers held that the failure to inform a defendant of the minimum and maximum sentences constituted a defect in an entry of a plea of guilty that went to the voluntariness of that plea and, therefore, was subject to collateral challenge under Boykin v. Alabama, infra. The collateral challenge in Ex parte Rivers to the plea of guilty was made within the two-year period of limitations.
Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709,23 L.Ed.2d 274 (1969), established the procedural due process requirements that must be met before a guilty plea can be considered to have been voluntarily and intelligently entered. In Boykin, the defendant had been convicted on five separate charges of common law robbery and had been sentenced to die by electrocution. This Court affirmed his convictions. The United States Supreme Court reversed the convictions, citing with approval the conclusion of the three dissenting Justices of this Court who would have reversed the judgment on the grounds that the record did not disclose that the defendant had voluntarily and understandingly entered his plea of guilty. Id.,395 U.S. at 242, 89 S.Ct. at 1713, 23 L.Ed.2d at 278.
In Boykin, the United States Supreme Court drew an analogy between the cases in which a guilty plea is taken, waiving the right to trial, and those cases in which the right to counsel is waived:
 "In Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 [(1962),] we dealt with a problem of waiver of the right to counsel, a Sixth Amendment right. We held: 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.'
 "We think that the same standard must be applied to determining whether a guilty plea is voluntarily made. For, as we have said, a plea of guilty is more than an admission of conduct; it is a conviction. . . .
 "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against *Page 94 
compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 [(1964)]. Second, is the right to trial by jury. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491
[(1968)]. Third, is the right to confront one's accusers. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 [(1965)]. We cannot presume a waiver of these three important federal rights from a silent record.
 "What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. . . ."
395 U.S. at 243-44, 89 S.Ct. at 1712, 23 L.Ed.2d at 279-80.
The procedural requirements of Boykin have been incorporated into the Alabama Rules of Criminal Procedure at Rule 14.4.
Subsequent to Boykin, the Alabama appellate courts held that in order to enter a knowing and valid guilty plea, the defendant must be informed on the record of the maximum and minimum possible sentences. In Jones v. State, 48 Ala. App. 32,261 So.2d 451 (1972), the Court of Criminal Appeals citedBoykin v. Alabama as authority to remand the case to the trial court for a further hearing "as to whether or not the appellant, before pleading guilty, had been informed as to the minimum and maximum punishment for grand larceny." In 1973, this Court followed Jones v. State:
 "The 'utmost solicitude' required by Boykin, supra, requires a showing not only that the defendant believed he knew the range of punishment, but that his belief was accurate. The better practice is to elicit the maximum and minimum sentences from the defendant himself, so that the knowledge thereof appears on the face of the record. See Jones v. State, [48 Ala. App. 32, 261 So.2d 451 (1972)]."
Carter v. State, 291 Ala. 83, at 85, 277 So.2d 896, at 897-98 (1973). It is this holding upon which Ex parte Rivers was based.
As the United States Supreme Court explained inBoykin, a guilty plea waives nonjurisdictional constitutional rights. Things that have been held to be subject to waiver, in addition to those rights stated in Boykin, include claims of illegal search and seizure,[1] coerced confession,[2] improper grand jury selection,[3] and denial of speedy trial;[4] and a defendant may waive the right to present the entrapment defense.[5] "Nineteenth Annual Review of Criminal Procedure: U.S. Supreme Court and Courts of Appeals 1988-89," 78 Georgetown L.J. 853 at 1006 (April 1990). However, a guilty plea does not waive such jurisdictional challenges to a conviction as an argument that the indictment failed to charge an offense[6] or that the court lacked subject matter jurisdiction.[7] Id. at 1007.
Since Boykin, Alabama trial judges, when accepting a plea of guilty, have given a "Boykin colloquy," which gives an explanation of the defendant's constitutional rights and includes the maximum and minimum sentences that he can receive. The use of a written explanation of rights and a plea-of-guilty form is also authorized by the Alabama Rules of Criminal Procedure, Rule 14.4. The form has been commonly known as the "Ireland form," because its use was first upheld in Ireland v.State, 47 Ala. App. 65, *Page 95 250 So.2d 602, 604 (Ala.Crim.App. 1971). Rule 14.4, amended effective January 1, 1991, sets forth the current procedure for the acceptance of a guilty plea. That procedure includes conducting a "Boykin colloquy" between the trial judge and the accused and using a written explanation-of-rights form, similar to the "Ireland form"; the form is signed by the accused, his counsel, and the trial judge when a plea of guilty is accepted.
The question before us concerns the failure to advise a defendant of his right to be considered for youthful offender treatment pursuant to Ala. Code 1975, § 15-19-1 et seq. The Alabama Youthful Offender Act was modeled after the New York Youthful Offender Act and was approved on February 10, 1972. See Coleman v. Alabama, 827 F.2d 1469, 1470 n. 1 (11th Cir. 1987). An adjudication of youthful offender status is very different from conviction as an adult, because it is not deemed a conviction of crime at all:
 "The Youthful Offender Act is intended to extricate persons below twenty-one years of age from the harshness of criminal prosecution and conviction. It is designed to provide them with the benefits of an informal, confidential, rehabilitative system. A determination that one is a youthful offender (1) does not disqualify the youth from public office or public employment, (2) does not operate as a forfeiture of any right or privilege, (3) does not make him ineligible to receive any license granted by public authority, and (4) shall not be deemed a conviction of crime; and (5) the record shall not be open to public inspection except upon permission of the court. Title 15, § 266(6), Code of Alabama [1940]."
 Raines v. State, 294 Ala. 360, 363, 317 So.2d 559, 561
(1975). The determination whether a defendant is to be granted youthful offender status is left to the discretion of the trial judge. Section 15-19-1. An adjudication of youthful offender status may not be considered a prior felony conviction within the meaning of the Habitual Felony Offender Act, § 13A-5-9 et seq. Ex parte Thomas, 435 So.2d 1324, 1326
(Ala. 1982); Thomas v. State, 445 So.2d 992, 994 n. 1 (Ala.Crim.App. 1984).
In 1975, this Court imposed an affirmative duty on the trial court to apprise an age-eligible defendant of his right to possible youthful offender status. Clemmons v. State,294 Ala. 746, 750, 321 So.2d 238, 243 (1975). However, we held that advising an age-eligible defendant was not mandated by the Constitution of the United States or by the Constitution of the State of Alabama. 294 Ala. at 750, 321 So.2d at 242, 243. In 1987, the Eleventh Circuit Court of Appeals held that the failure to advise an age-eligible defendant that he has the right to request consideration for youthful offender treatment violates his federal due process rights under the Fourteenth Amendment. Coleman v. Alabama, 827 F.2d 1469, 1475 (11th Cir. 1987).
This Court answered the question of when the age-eligible defendant should be informed of the possibility of youthful offender status in Ex parte Petty, 548 So.2d 636, 637 (Ala. 1989):
 "We hold, then, that while a trial court should inform a youthful defendant of the provisions of the Youthful Offender Act prior to the plea state, its failure to do so will not constitute reversible error if the court gives adequate notice prior to conviction, unless, of course, the defendant entered a plea of 'guilty' to the charges against him, without notice of the Act, or he can otherwise show that he has been prejudiced by the court's delay."
Id. at 638. (Emphasis in original.)
In Lochli v. State, 565 So.2d 294 (Ala.Crim.App. 1990), the Alabama Court of Criminal Appeals cited Coleman with approval:
 "Under Coleman v. Alabama, 827 F.2d 1469 (11th Cir. 1987), the right to apply for youthful offender treatment is the equivalent of a sentencing option and an age-eligible defendant must be apprised of this right prior to the acceptance of his guilty plea. However, the failure of a trial court to advise a defendant of his right to apply for youthful offender treatment prior to the acceptance of the guilty plea does not automatically require that the plea be set aside. See Pardue v. State, 566 So.2d 502, 504 (Ala.Cr.App. 1990). As in any situation *Page 96 
where the defendant is given sentencing misinformation, the mere fact that he was given such misinformation
 " ' "does not end the matter. 'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162, 168
(1970). . . ." ' "
565 So.2d at 297. In Lochli, the defendant's plea of guilty was not set aside. The trial court had taken the remedial action of allowing the defendant Lochli to apply retroactively for youthful offender treatment; Lochli had made no allegation, nor had he offered any proof, that he would not have pleaded guilty had he been informed of his right to apply for youthful offender treatment.
Following the certification of the question addressed here, this Court, on October 15, 1993, released Ex parte Cantu. In that case, Cantu pleaded guilty to trafficking in cocaine, but did not appeal. He later filed a petition seeking post-conviction relief under Rule 32, A.R.Crim.P., on the grounds that the trial judge had failed to advise him of the maximum sentence he could receive, and that he had not entered his guilty plea voluntarily with an understanding of the consequences of his plea. The Court of Criminal Appeals reversed Cantu's conviction on the authority of Ex parteRivers, 597 So.2d 1308 (Ala. 1991). Cantu v. State, [Ms. CR-91-726, September 30, 1992] 1992 WL 240979 (Ala.Crim.App. 1992). In its October 15 opinion, this Court reversed the judgment of the Court of Criminal Appeals and overruled Exparte Rivers insofar as it permitted a post-judgment challenge to a guilty plea. This Court reasoned in Ex parte Cantu that by failing to raise the adequacy of the Boykin colloquy by direct appeal, the defendant Cantu was procedurally barred from raising it in a collateral attack under Rule 32. That holding has now been modified on application for rehearing to hold that a defect in a guilty plea may be collaterally challenged under Rule 32 if the challenge is brought within the two-year limitations period set forth in Rule 32.2(c), A.R.Crim.P. Exparte Cantu, [Ms. 1920426, April 15, 1994] 1994 WL 129749 (Ala. 1994).
We therefore answer the question in the negative. The failure to inform an age-qualified defendant of his right to apply for youthful offender treatment goes to the voluntariness of the guilty plea, not to the jurisdiction of the trial court. The question of the voluntariness of a guilty plea in a failure-to-advise case may be raised upon direct appeal or it may be raised collaterally under Rule 32 if it is raised within the limitations period of Rule 32.2(c), A.R.Crim.P.
QUESTION ANSWERED.
HORNSBY, C.J., and MADDOX, HOUSTON, STEAGALL, KENNEDY, INGRAM and COOK, JJ., concur.
[1] Smith v. United States, 876 F.2d 655, 657 (8th Cir.), cert.denied, 493 U.S. 869, 110 S.Ct. 195, 107 L.Ed.2d 149 (1989).
[2] McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449,25 L.Ed.2d 763 (1970).
[3] Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608,36 L.Ed.2d 235 (1973).
[4] Lebowitz v. United States, 877 F.2d 207, 209 (2d Cir. 1989).
[5] United States v. Sarmiento, 786 F.2d 665, 668 (5th Cir. 1986).
[6] United States v. Morales-Rosales, 838 F.2d 1359, 1361 (5th Cir. 1988).
[7] United States v. Mathews, 833 F.2d 161, 164 (9th Cir. 1987).