261 So.2d 443

**Walter SPIDELL, alias**

v.

**STATE.**

**7 Div. 136.**

Court of Criminal Appeals of Alabama.

Jan. 25, 1972.

After Remandment in Circuit Court

April 18, 1972.

Hubert H. Wright, Gadsden, for appellant.

William J. Baxley, Atty. Gen., and Samuel L. Adams, Asst. Atty. Gen., for the State.

CATES, Judge.

Robbery: sentence, life imprisonment.

Spidell changed his plea from not guilty to guilty.[1] The Court reporter set out the colloquy between the bench and the prisoner. Mainly it comports with Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L. Ed.2d 274, except that no mention was made of the minimum and maximum possible sentences. See Question No. 19, "Questions to be Asked of Defendants at Arraignment on Guilty Pleas in Felony Cases" by Hon. F. Murland Smith at 1970 Circuit Judges Summer Seminar. C.L.E. program, Alabama State Bar, July 16, 1970.

Such an enquiry is important to a record which speaks for itself as to the understanding of a defendant who pleads guilty.

We consider it necessary to remand to the lower court to ascertain if either counsel or court had beforehand told Spidell of the range of punishment.[2]

Remanded with directions.

PRICE, P. J., and ALMON, J., concur.

### AFTER REMANDMENT HEARING IN THE CIRCUIT COURT

CATES, Judge.

Defense counsel testified in positive terms that he had advised Spidell spe-

1. No jury was impaneled. See Act No. 1061, September 12, 1969.
2. Footnote 7 in Boykin v. Alabama, supra, quotes from Commonwealth ex rel. West v. Rundle, 428 Pa. 102, 237 A.2d 196,

cifically both before and after being appointed as his counsel that the range of punishment for robbery was "from ten years to the chair."

The appellant was not so decided in his recollection. Understandably a solipsistic hope might help him in the present review.

However, we consider that the preponderance of proof is with the State. Thus, we find part of the appellant's testimony:

"Cross-Examination by Mr. Rayburn:

"Q Mr. Spidell, you are not telling the court this morning that you were not advised of the maximum and minimum punishment for robbery, are you?

"A You say I'm not?

"Q Is that right or wrong? As I understood your testimony—What I am saying, Walter, you do say now that Mr. Wright did advise you or your counsel did advise you, is that correct or not?

"A Well, to my remembrance maybe he did.

"Q All right, and as a matter of fact he did on several occasions, didn't he, Walter, advise you of the maximum and minimum range of punishment you could get for robbery?

"A Yes, sir, I think he did.

"Q Now, according to the record and the docket sheet this came up before Judge Waid. This is Judge Waid sitting here today. Do you recall Judge Waid?

"A Yes, sir, I think I remember him.

"Q And do you remember that the State was to take off two robbery cases, nol-pros them, in an agreement with you to take life in one of the cases?

Do you remember Mr. Wright discussing that with you? Did you understand that?

"A Well, I heard—I mean I remember him talking to me about it.

"Q And I take it that met with your approval?

"A Yes, I went along with him because, like I said, I didn't know what I was doing."

\*     \*     \*     \*     \*     \*

"Q And you know that after the appointment Mr. Hubert H. Wright counseled with you on several occasions, didn't he, concerning your case? Talked to you about the case?

"A Yes, what little time was left. There wasn't no time just before court. That is the only time. I seen him upstairs there about seven or eight minutes. He never did come back upstairs.

"Q And did Mr. Hubert H. Wright ever force you to take a plea as you have said forced?

"A He didn't ever force me.

"Q Did Judge Waid here ever force you to take a plea of guilty?

"A No.

"Q As a matter of fact, Walter, you were happy to get these two robbery cases off in exchange for pleading in one of them, weren't you?

"A Well, I wouldn't say so much as happy.

"Q Well, it met with your approval? That met with your approval, didn't it?

wherein trial courts are adjured to conduct *on the record examinations* of defendants who want to plead guilty. There it is said the examinations should in-

clude, among other things, the permissible range of sentences.
See also Beal v. Henderson, D.C., **317** F.Supp. 1323; Anno. 97 A.L.R.2d 549.

"A At the time, see, I didn't know, you know, what kind of time I had, how long I would have to be down there. I didn't understand.

"Q Now, didn't Mr. Hubert H. Wright, your court appointed attorney, tell you how soon you would be eligible for parole?

"A Yes, he told me once they were so crowded I could get out in five years. That was his words. He said ten once, but he said five again. I didn't know. I hadn't been to the penitentiary before.

"Q When he told you the maximum penalty was the chair you understood what the chair is, don't you?

"A Yes, sir.

"Q You have mentioned Mr. L. P. Payne. Did he force you to take a plea of guilty in this robbery case?

"A Well, he didn't exactly force me. It is just something I got into. I wasn't even going to open my mouth. I mean I just didn't understand what was going on at that time.

"Q Don't you recall at the time that you changed your plea from not guilty to guilty before Judge Waid here going over these things with Judge Waid? Do you recall that?

"A I guess I do.

"Q Don't you remember that Judge Waid told you you didn't have to plead guilty; that you had a right to a jury trial if you so desired one?

"A I think I remember that."

The judgment below is hereby

Affirmed.

PRICE, P. J., and ALMON and TYSON, JJ., concur.