Megale Garcia Riley appeals the circuit court's summary denial of his Rule 32, Ala.R.Crim.P., petition for postconviction relief, in which he attacked his January 24, 2001, guilty-plea conviction for assault in the first degree and his resulting sentence, as a habitual offender, of life imprisonment. This Court affirmed Riley's conviction and sentence on direct appeal in an unpublished memorandum issued on February 22, 2002. Rileyv. State (No. CR-00-2426), 854 So.2d 1219 (Ala.Crim.App. 2002) (table). This Court issued a certificate of judgment on March 12, 2002.
Riley timely filed his Rule 32 petition on February 21, 2003. In his petition, Riley alleged, among other things, that his guilty plea was involuntary. After receiving a response from the State, the circuit court summarily denied Riley's petition in a written order on January 6, 2004.
On appeal, Riley contends that the circuit court erred in denying his Rule 32 petition because, he says, his guilty plea was involuntary. He argues that the trial court misinformed him of the minimum and maximum sentences he could receive — specifically, that the trial court informed him that the Habitual Felony Offender Act ("HFOA") would not apply, but that at the sentencing hearing, the trial court sentenced him to life imprisonment as a habitual offender. He maintains that had he known the HFOA would apply and he could be sentenced to life imprisonment, he would not have pleaded guilty.[1] The State agrees that Riley's guilty plea was involuntary and that he is entitled to Rule 32 relief.
The record reflects that in August 2000, Riley was indicted for attempted murder. On January 24, 2001, Riley pleaded guilty to the lesser charge of assault in the first degree, as well as to one count of unlawful possession of a controlled substance, and one count of unlawful possession of marijuana.[2] On May 1, 2001, Riley was sentenced *Page 473 
for those convictions. For the assault conviction, Riley was sentenced, as a habitual offender with two prior felony convictions, to life imprisonment. For the unlawful-possession-of-a-controlled-substance conviction and the unlawful-possession-of-marijuana conviction, he was sentenced, without application of the HFOA, to five years' imprisonment. The two felony convictions used to enhance Riley's sentence for the assault conviction were April 6, 1999, guilty-plea convictions. The April 6, 1999, convictions were not used to enhance Riley's sentences for the unlawful-possession-of-a-controlled-substance conviction and the unlawful-possession-of-marijuana conviction because those crimes had occurred on January 30, 1999, before Riley had been adjudicated guilty on April 6, 1999. See, e.g.,Craig v. State, (Ms. CR-02-0812, March 26, 2004) (holding that to constitute a "prior conviction" for purposes of the Habitual Felony Offender Act, the defendant must have been adjudicated guilty before the present crime was committed).* Because the assault occurred on March 28, 2000, the April 6, 1999, convictions were used to enhance Riley's sentence on the assault conviction.
However, the transcript of the guilty-plea colloquy, which is contained in the Rule 32 record, reflects that Riley was improperly told that the HFOA would not apply to the assault conviction and that, therefore, the minimum sentence he could receive with application of the weapons enhancement in §13A-5-6(a)(5), was 10 years' imprisonment, and the maximum sentence he could receive was 20 years' imprisonment. After the trial court ascertained what the various charges were against Riley, the following occurred:
 "THE COURT: Is the Habitual [Felony] Offender Act applicable?
 "[Prosecutor]: [Defense counsel] believes it is not. Let me do a quick check. The possession of marijuana and possession of cocaine offense date is December 30, 1999.
"[Riley's counsel]: Actually, it was in January.
"[Prosecutor]: It is January.
 "[Riley's counsel]: He was sentenced on those two, the ones that he is on probation on he was not sentenced until [April] of '99. So this occurred —
 "[Prosecutor]: I believe you are correct. [HFOA] would not apply to either of the two cases.
 "THE COURT: Mr. Riley that means you got two Class `B's' and one `C.'[3] Do you understand that?
"[Riley]: Yes, sir.
 "THE COURT: Habitual offender will not apply. So on the Class `C' felony, if you plead guilty and I find you guilty, I could sentence you to a term of imprisonment of not less than one nor more than ten years, a fine not to exceed five thousand dollars. Class `B' felonies, I can sentence you to a term of imprisonment not less than two nor more than twenty years and a fine not to exceed ten thousand dollars. Do you understand that?
"[Riley]: Yes, sir. *Page 474 
 "THE COURT: Lawyers, do any other enhancements apply on that assault case?
 "[Prosecutor]: Yes, sir. And that would be the weapons enhancement.
 "THE COURT: Weapons enhancement applies. That means the range of punishment would not be two to twenty, but would be not less than ten years nor more than life, and a fine not to exceed — not less than ten years nor more than twenty years, fine not to exceed ten thousand dollars. Do you understand that?
"[Riley]: Yes, sir."
(C. 103-05.) (Emphasis added.) In addition, the Ireland
form,[4] also contained in the Rule 32 record, does not indicate the sentencing range for the assault conviction.
In her response to Riley's Rule 32 petition, the assistant district attorney argued that although there was "some confusion" regarding the sentencing range for the assault conviction during the guilty-plea colloquy, there was "ample evidence" that Riley was "well aware" that he had two prior felony convictions and that the sentencing range for the assault conviction under the HFOA was 15 years to life. (C. 65.) In support of this assertion, the assistant district attorney attached to her response (1) a copy of a letter sent to Riley's trial counsel in August 2000, shortly after Riley was indicted, in which the State gave notice of its intent to invoke the HFOA, and (2) an affidavit submitted by Riley's trial counsel in which counsel averred that she had spoken with Riley on numerous occasions before his plea and had made it "very clear" to him that, with his prior convictions, Riley would receive a mandatory life sentence if he were convicted of the attempted-murder charge; that Riley "clearly understood" that the only way to avoid a mandatory life sentence was if the State would reduce the charge to assault; and that "Mr. Riley and his family were clear on the range of punishment that he was facing." (C. 115-16.)
Rule 14.4, Ala.R.Crim.P., provides, in pertinent part:
 "(a) Colloquy With Defendant. . . . [T]he court shall not accept a plea of guilty without first addressing the defendant personally in the presence of counsel in open court for the purposes of:
 "(1) Ascertaining that the defendant has a full understanding of what a plea of guilty means and its consequences, by informing the defendant of and determining that the defendant understands:
". . . .
 "(ii) The mandatory minimum penalty, if any, and the maximum possible penalty provided by law, including any enhanced sentencing provisions."
(Emphasis added.)
"The Alabama Supreme Court and this Court `have consistently held that a defendant must be informed of the maximum and minimum possible sentences as an absolute constitutional prerequisite to the acceptance of a guilty plea.' Ex parte Rivers,597 So.2d 1308, 1309 (Ala. 1991). It is well settled, moreover, that `if the appellant's sentence could be enhanced under any of the enhancement statutes, the appellant should be informed of the additional sentence he could receive under the applicable enhancement statute.' Elrod v. State, 629 So.2d 58, 59
(Ala.Cr.App. 1993), citing Rivers. Accord, White v. State,616 So.2d 399 (Ala.Cr.App. 1993); Looney v. State, 563 So.2d 3,4 (Ala.Cr.App. 1989); *Page 475 Smith v. State, 494 So.2d 182 (Ala.Cr.App. 1986)."
Aaron v. State, 673 So.2d 849, 849-50 (Ala.Crim.App. 1995). As this Court noted in White v. State, 888 So.2d 1288
(Ala.Crim.App. 2004):
 "The law in Alabama is clear that the trial court's failure to correctly advise a defendant of the minimum and maximum sentences before accepting his guilty plea renders that guilty plea involuntary. In Ex parte Rivers, 597 So.2d 1308 (Ala. 1991), as in the present case, the appellant was not advised, before he entered his guilty plea, of the minimum possible sentence. Citing Carter v. State, 291 Ala. 83, 277 So.2d 896 (1973), the Alabama Supreme Court reversed Rivers's conviction.
 "`Carter v. State notes that subsequent to the United States Supreme Court case of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274
(1969), it became established that the defendant must be informed of the maximum and minimum possible sentences as an absolute constitutional prerequisite to the acceptance of a guilty plea. Carter v. State, citing Jones v. State, 48 Ala.App. 32, 261 So.2d 451 (1972); Spidell v. State, 48 Ala.App. 24, 261 So.2d 443 (1972); People v. Ingeneri, 7 Ill.App.3d 809, 288 N.E.2d 550 (1972); People v. Buck, 7 Ill.App.3d 758, 288 N.E.2d 548 (1972); Cooper v. State, 47 Ala.App. 178, 252 So.2d 104
(1971), cert. denied, 287 Ala. 728, 252 So.2d 108
(1971). "Boykin stands for the proposition that a defendant is constitutionally entitled to have information concerning the range of punishment prescribed by the act to which he may be sentenced and the consequences of the conviction at the time he enters his guilty plea." Coleman v. Alabama, 827 F.2d 1469, 1473 (11th Cir. 1987).'
"Rivers, 597 So.2d at 1309."
888 So.2d at 1290. "This Court has repeatedly held guilty pleas to be involuntary when a defendant was not properly informed of the minimum and maximum sentence he could receive." Schartau v.State, 870 So.2d 770, 772 (Ala.Crim.App. 2003). See alsoRagland v. State, 883 So.2d 730 (Ala.Crim.App. 2003); Brooksv. State, 854 So.2d 643 (Ala.Crim.App. 2003); Handley v.State, 686 So.2d 540 (Ala.Crim.App. 1996); Peoples v. State,651 So.2d 1125 (Ala.Crim.App. 1994); Broaden v. State,645 So.2d 368 (Ala.Crim.App. 1994); and Jones v. State,624 So.2d 676 (Ala.Crim.App. 1992).
In this case, Riley was not properly informed when he entered his guilty plea of the minimum and maximum sentence he could receive. Although the State had given notice of its intent to invoke the HFOA before Riley's plea and trial counsel apparently had had several discussions with Riley about the sentence he could receive, there was, as the assistant district attorney conceded in her response to Riley's petition, confusion at the guilty-plea colloquy regarding whether Riley would be subject to the HFOA. Based on that confusion, Riley was specifically told by the trial court that the HFOA would not apply to his sentence for the assault conviction, and that the minimum sentence he could receive was 10 years' imprisonment and the maximum sentence he could receive was 20 years' imprisonment. Despite this misinformation, the trial court sentenced Riley to life imprisonment upon application of the HFOA. The fact that Riley may have been properly advised by his trial counsel that he was facing a sentencing range of 15 years to life under the HFOA does not change the fact that Riley was clearly misinformed by the trial court regarding the *Page 476 
minimum and maximum sentence he could receive. As this Court stated in Heard v. State, 687 So.2d 212 (Ala.Crim.App. 1996):
 "We cannot agree with the State's argument that because the appellant was informed of the [proper] minimum sentence by his attorney the trial court's error does not require reversal. Such a holding would frustrate the requirement of Rule 14.4, Ala.R.Crim. P., that mandates that a trial judge inform a criminal defendant of the consequences of entering a guilty plea so as to ensure that the entry of a guilty plea is a voluntary and intelligent decision."
687 So.2d at 213. Riley's guilty plea was, therefore, involuntary. See Jones v. State, 727 So.2d 889 (Ala.Crim.App. 1998), and Aaron, 673 So.2d at 850 (both holding that because the defendant was not informed at the guilty-plea colloquy that the HFOA was applicable to the sentence, guilty plea was involuntary).
Based on the foregoing, the judgment of the circuit court is reversed and this cause remanded for the circuit court to grant Riley's Rule 32 petition and to set aside Riley's conviction and sentence for assault in the first degree.[5]
REVERSED AND REMANDED.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.
[1] We note that, although this issue was raised on direct appeal, this Court held that it had not been preserved for review because it had never been presented to the trial court, and we did not address the merits of the issue. Therefore, contrary to the circuit court's finding, this issue is not barred. See Cantuv. State, 660 So.2d 1026 (Ala. 1994).
[2] In his Rule 32 petition, Riley does not challenge the two drug-related convictions.
* Note from the reporter of decisions: On June 26, 2004, the Court of Criminal Appeals withdrew its March 26, 2004, opinion inCraig v. State and substituted a new opinion. The June 26, 2004, opinion contains the same holding.
[3] We note that this information was also incorrect. Riley pleaded guilty to two Class C felonies — unlawful possession of a controlled substance, see § 13A-12-212, Ala. Code 1975, and unlawful possession of marijuana, see § 13A-12-213, Ala. Code 1975 — and one Class B felony — assault in the first degree, see §13A-6-20, Ala. Code 1975.
[4] Ireland v. State, 47 Ala.App. 65, 250 So.2d 602 (Crim. 1971).
[5] Because of our disposition of this case, we need not address the other issues raised by Riley in his Rule 32 petition. *Page 845