SHAW, Judge.
Reginald D’Andre White was indicted in case no. CC-05-1060 for one count of trafficking in cocaine, a violation of § 13A-12-231(2), Ala.Code 1975, and in case no. CC-05-1751 for two counts of unlawful distri- *1210 button of a controlled substance, violations of § 13A-12-211, Ala.Code 1975, and for three counts of unlawful possession of a controlled substance, violations of § 13A-12 — 212(a)(1), Ala.Code 1975. On December 7, 2005, pursuant to an “open-ended” plea agreement with the State, White pleaded guilty to the trafficking charge and to the two distribution charges. (R. 13.) In accordance with the plea agreement, White also pledged his assistance and/or testimony in the prosecution of other drug-related cases and promised to avoid incurring any new charges. In exchange, the three possession charges were dismissed and White’s sentencing was postponed.
On October 17, 2006, White was arrested and charged with a new unrelated offense. Thereafter, the trial court set White’s sentencing hearing on the pending drug charges for September 6, 2007. On September 5, 2007, White filed a motion to withdraw his previous guilty pleas to those offenses,[1] which was denied by the trial court. White was ultimately sentenced, as an habitual offender, to life imprisonment without the possibility of parole for the trafficking conviction and to life imprisonment for each of the two distribution convictions.[2] The trial court ordered the sentences for the two distribution convictions to run concurrently with each other, but consecutively to the sentence for the trafficking conviction.
White’s sole contention on appeal is that the trial court abused its discretion in denying his motion to withdraw his pleas. Specifically, he argues that his guilty pleas were not knowingly, voluntarily, and intelligently given because, he says, the trial court did not properly advise him of the applicable minimum and maximum sentencing ranges for the charges to which he pleaded guilty. He maintains that “the Ireland form filled out by [White’s plea] counsel has an improper range of punishment circled for [the trafficking] charge and no range of punishment circled for the [distribution] chargefs].” (White’s brief at p. 9.)
The record reflects that, during the guilty-plea colloquy, the following occurred:
“THE COURT: Sir, you have executed an explanation of rights and a plea of guilty form. And it appears on the back of these forms that that’s your signature. Is that your signature (indicating)?
“[White]: Yes, sir.
“THE COURT: On each of the forms (indicating)?
“[White]: Yes, sir.
“THE COURT: Did you read these forms, including all the rights set forth in the forms?
“[White]: Yes, sir.
“THE COURT: Are you capable of reading and understanding the written English language?
“[White]: Yes, sir.
*1211 “THE COURT: Did your attorney go over the form with you?
“[White]: Yes, sir.
“THE COURT: Based upon your reading of the rights and his explanation of them, do you think you fully understand all of your rights in the form?
“[White]: Yes, sir.
“THE COURT: Have any questions about them at this time?
“[White]: No, sir.”
(R. 4-5; emphasis added). In addition, both White and his appointed counsel participated in the following exchange, which subsequently occurred during the colloquy:
“THE COURT: Do you know what you’re charged with in each case, sir?
“[White]: Yes, sir.
“THE COURT: [White’s counsel], did you go over the range of punishment with him in each case?
“[White’s counsel]: Yes, Your Honor.
“THE COURT: Now, in this one particularly — is that correct, sir — he went over the range of punishment with you?
“[White]: Yes, sir.
“THE COURT: And the enhancement aspect in that you have three prior felonies. And we’ll address those in just a moment. But did he go over all that with you, sir?
“[White]: Yes, sir.
“THE COURT: Is that correct, [White’s counsel]?
“[White’s counsel]: Yes, sir.
“THE COURT: And you understand that this is an open-ended plea in that the Court will transcribe this plea today, it will be kept here confidential, and that there’s a certain range that if you fulfill your obligations, it’s one thing, if you fail to fulfill your obligations, it’s something else. You understand that?
“[White]: Yes, sir.”
(R. 8-9.) The trial court then advised White as to the appropriate fines and/or fees applicable to each charge to which White was pleading guilty and also discussed the possibility of reducing the charges against White if he adequately cooperated with law enforcement. The trial court further reminded White that, if he failed to appear at sentencing, it could “sentence [him] to the maximum amount under both eases under each count that [White was] pleading to,” which White affirmatively indicated on the record that he understood. (R. 13.) During the discussion of White’s prior felonies for sentencing purposes, the trial court again noted that White “said he’s already been over the range of punishment.” (R. 16.)
The record also contains two standard Ireland forms signed by White, his counsel, and the trial court — one for the trafficking charge and one for the two distribution charges. The standard Ireland form includes preprinted information setting out the basic sentencing ranges for all classes of felonies, as well as the various sentencing ranges for all classes of felonies under the Habitual Felony Offender Act (“the HFOA”) based on the number and class of the prior convictions. The Ireland form for the distribution charges in this case properly designated both distribution offenses as Class B felonies, but did not specifically designate (such as with a circle or checkmark) which sentencing range was applicable to the charges. Nonetheless, the preprinted information on the form included the proper sentencing range upon conviction of a Class B felony for a defendant with three or more prior felony convictions — 20 years’ imprisonment to life imprisonment. The Ireland form for the trafficking conviction properly designated trafficking as a Class A felony, and the sentencing range for a Class A *1212 felony with three or more prior convictions, one or more of which was a Class A felony, is listed as mandatory life imprisonment without the possibility of parole, and is specifically designated on the form by a circle.
“ ‘The Alabama Supreme Court and this Court “have consistently held that a defendant must be informed of the maximum and minimum possible sentences as an absolute constitutional prerequisite to the acceptance of a guilty plea.” Ex parte Rivers, 597 So.2d 1308, 1309 (Ala.1991). It is well settled, moreover, that “if the appellant’s sentence could be enhanced under any of the enhancement statutes, the appellant should be informed of the additional sentence he could receive under the applicable enhancement statute.” Elrod v. State, 629 So.2d 58, 59 (Ala.Cr.App.1993), citing Rivers. Accord, White v. State, 616 So.2d 399 (Ala.Cr.App.1993); Looney v. State, 563 So.2d 3, 4 (Ala.Cr.App.1989); Smith v. State, 494 So.2d 182 (Ala.Cr.App.1986).’
“Aaron v. State, 673 So.2d 849, 849-50 (Ala.Crim.App.1995). As this Court noted in White v. State, 888 So.2d 1288 (Ala.Crim.App.2004):
“ ‘The law in Alabama is clear that the trial court’s failure to correctly advise a defendant of the minimum and maximum sentences before accepting his guilty plea renders that guilty plea involuntary. In Ex parte Rivers, 597 So.2d 1308 (Ala.1991), as in the present case, the appellant was not advised, before he entered his guilty plea, of the minimum possible sentence. Citing Carter v. State, 291 Ala. 83, 277 So.2d 896 (1973), the Alabama Supreme Court reversed Rivers’s conviction.
“ ‘ “Carier v. State notes that subsequent to the United States Supreme Court case of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), it became established that the defendant must be informed of the maximum and minimum possible sentences as an absolute constitutional prerequisite to the acceptance of a guilty plea. Carter v. State, citing Jones v. State, 48 Ala.App. 32, 261 So.2d 451 (1972); Spidell v. State, 48 Ala.App. 24, 261 So.2d 443 (1972); People v. Ingeneri, 7 Ill.App.3d 809, 288 N.E.2d 550 (1972); People v. Buck, 7 Ill.App.3d 758, 288 N.E.2d 548 (1972); Cooper v. State, 47 Ala.App. 178, 252 So.2d 104 (1971), cert. denied,, 287 Ala. 728, 252 So.2d 108 (1971). ‘Boykin stands for the proposition that a defendant is constitutionally entitled to have information concerning the range of punishment prescribed by the act to which he may be sentenced and the consequences of the conviction at the time he enters his guilty plea.’ Coleman v. Alabama, 827 F.2d 1469, 1473 (11th Cir.1987).”
“ ‘Rivers, 597 So.2d at 1309.’
“888 So.2d at 1290. ‘This Court has repeatedly held guilty pleas to be involuntary when a defendant was not properly informed of the minimum and maximum sentence he could receive.’ Schartau v. State, 870 So.2d 770, 772 (Ala.Crim.App.2003). See also Ragland v. State, 883 So.2d 730 (Ala.Crim.App. 2003); Brooks v. State, 854 So.2d 643 (Ala.Crim.App.2003); Handley v. State, 686 So.2d 540 (Ala.Crim.App.1996); Peoples v. State, 651 So.2d 1125 (Ala. Crim.App.1994); Broaden v. State, 645 So.2d 368 (Ala.Crim.App.1994); and Jones v. State, 624 So.2d 676 (Ala.Crim. App.1992).”
*1213 Riley v. State, 892 So.2d 471, 474-75 (Ala.Crim.App.2004).
Rule 14.4, Ala.R.Crim.P., provides, in pertinent part:
“(a) Colloquy With Defendant. In all minor misdemeanor cases, the execution of a form similar to Form C-44B will be sufficient and no colloquy shall be required. In all other cases, except where the defendant is a corporation or an association, the court shall not accept a plea of guilty without first addressing the defendant personally in the presence of counsel in open court for the purposes of:
“(1) Ascertaining that the defendant has a full understanding of what a plea of guilty means and its consequences, by informing the defendant of and determining that the defendant understands:
[[Image here]]
“(ii) The mandatory minimum penalty, if any, and the máximum possible penalty provided by law, including any enhanced sentencing provisions ...
(Emphasis added.) However, subsection (d) of Rule 14.4 provides that “[t]he court may comply with the requirements of Rule 14.4(a) by determining from a personal colloquy with the defendant that the defendant has read, or has had read to the defendant, and understands each item contained in Form C-44B, CR-51, CR-52, or C-44A, as the case may be.” (Emphasis added.) The Committee Comments to Rule 14.4 provide, in pertinent part:
“Section (d) is included to accommodate the current Alabama practice of informing the defendant of his rights through a form similar to that approved in Ireland v. State, 47 Ala.App. 65, 250 So.2d 602 (1971), and subsequent cases. The rule, however, specifically retains the requirement that the trial judge personally address the defendant in order to determine that he understands the contents of the form and that the judge specifically question the defendant concerning the information contained in each item. Thus, in every case, the record should affirmatively show a colloquy between the trial judge and the defendant concerning all such matters. Twyman v. State, 293 Ala. 75, 300 So.2d 124 (1974), held that where the record affirmatively shows that the defendant was informed of and understood his rights, the record need not include a full transcript of the colloquy. Subsequent cases in the Court of Appeals have held that while a full colloquy is not required where the form is used, the record must show that the tnal judge made inquiry as to the defendant’s understanding of the rights set out in the form,. This ■rule requires such a colloquy and requires that specific inquiry be made with regard to the rights set out in Ride lUA(a)(l) and (2). Such procedure will ensure that the form herein approved does not ‘become so commonplace and perfunctory that [it fails] to sei~ve the pm-pose for which [it is] intended,.’ See Twyman v. State, 293 Ala. 75, 83, 300 So.2d 124, 131 (1974) (Heflin, C.J., dissenting).”
(Emphasis added.) Finally, we note that “[wjhether to allow a defendant to withdraw his guilty plea rests within the sound discretion of the trial court, and this Court will not overrule that decision on appeal absent an abuse of discretion.” Thacker v. State, 703 So.2d 1023, 1026 (Ala.Crim.App.1997).

Pleas to Distribution Charges

As to White’s pleas to the two counts of unlawful distribution of a controlled substance, White argues in his brief on appeal, as he did to the trial court, that *1214 because the trial court did not specifically explain the range of punishment during the guilty-plea colloquy and because no range of punishment was specifically designated by a circle or checkmark on the Ireland form, he could not have been properly informed of the sentencing range. However, White has cited no authority, nor have we found any, that requires that a sentencing range be specifically designated on the Ireland form when that form properly lists all the possible sentencing ranges. Nor can we agree with White that the absence of an indicated range on the Ireland form is evidence, by itself, that a defendant was not advised of the proper sentencing range applicable to those offenses.
In this case, White presented no evidence, nor has he even specifically alleged, that when his counsel explained the range of punishment for the distribution charges, as White acknowledged happened, counsel did not explain the correct range of punishment, i.e., 20 years’ imprisonment to life imprisonment. In addition, White acknowledged during the guilty-plea colloquy that he had read the Ireland form and that his counsel had discussed the sentencing range with him; the transcript of the guilty-plea colloquy clearly reflects that White understood that he was to be sentenced under the HFOA as a defendant with three or more prior felony convictions; [3] and the Ireland form properly designated the distribution charges as Class B felonies and listed the appropriate sentencing range for a Class B felony for a defendant with three or more prior felony convictions as 20 years to life. Under these circumstances, we conclude that White was properly advised of the minimum and maximum sentences he could receive, and we find no abuse of discretion on the part of the trial court in denying White’s motion to withdraw his guilty pleas to the two charges of distribution of a controlled substance.

Plea to Trafficking Charge

As to White’s guilty plea to the charge of trafficking in cocaine, however, we must agree that White was incorrectly advised of the minimum sentence he could receive.
As with the distribution pleas, the transcript of the guilty-plea colloquy reflects that the trial court did not specifically advise White of the minimum or maximum sentence he faced by pleading guilty to the charge of trafficking in cocaine; instead, pursuant to Rule 14.4(d), the trial court relied on the Ireland form and the assertions of White and his counsel that counsel had discussed the applicable sentencing range with White. If this Ireland form had been free of any markings specifically indicating the sentencing range explained to White by his counsel, as was the Ireland form for the distribution charges, we would find no error for the reasons we found no error relating to White’s guilty pleas to the distribution charges. However, the Ireland form for the trafficking charge specifically designated (by a circle) a mandatory sentence of life imprisonment without the possibility of parole for a Class A felony for a defendant with three or more prior felony convictions, with one or more of those convictions being a Class A felony. The record demonstrates, however, that White had no prior Class A felony convictions. All of his prior convictions *1215 were either Class B or Class C felonies. Having no prior convictions for a Class A felony, the proper sentencing range was life imprisonment or life imprisonment without the possibility of parole. See § 13A-5-9(c)(3), Ala.Code 1975. Just as we will not presume that White was incorrectly advised of the sentencing range for the distribution charges where the Ireland form did not specifically designate a sentencing range, we likewise will not presume that White was advised of a different sentencing range for the trafficking charge than the range specifically designated on the Ireland form. Thus, we have no choice but to conclude that White was misinformed as to the sentencing range he faced by pleading guilty to the trafficking charge and that his guilty plea was involuntary. “When an accused who pleads guilty does so on the basis of misinformation as to the range of punishment the guilty plea is involuntary.” Handley v. State, 686 So.2d 540, 541 (Ala.Crim.App.1996), citing Cantu v. State, 660 So.2d 1026 (Ala.1994). Accordingly, the trial court erred in denying White’s motion to withdraw his guilty plea to the charge of trafficking in cocaine.

Conclusion

Based on the foregoing, we affirm White’s convictions and sentences for two counts of distribution of a controlled substance. However, we reverse White’s conviction and sentence for trafficking in cocaine and we remand this case for the trial court to allow White to withdraw his guilty plea to the trafficking charge. No return to remand need be filed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
McMILLAN and WELCH, JJ., concur.
BASCHAB, P.J., concurs in the result.
WISE, J., concurs in part and dissents in part, with opinion.

. This motion was sufficient to invoke White’s right to appeal. See Rule 26.9(b)(4), Ala. R.Crim.P.

. Although the indictment charging the distribution offenses alleged that both sales took place within three miles of a public housing authority and within three miles of a school, see §§ 13A-12-250 and 13A-12-270, Ala. Code 1975, and the Ireland v. State, 47 Ala. App. 65, 250 So.2d 602 (1971), form indicated that the sentences would be enhanced pursuant to those code sections, the State did not include in its factual basis for the pleas any statement that the sales did, in fact, occur within three miles of a public housing authority or a school, and those enhancements were not applied by the trial court in sentencing White, presumably due to the lack of a factual basis to support them.

. During the colloquy, the prosecutor even listed the eight priors on which it was relying to invoke the HFOA.